May it please the court, counsel, my name is Mark Werksman and I'm here on behalf of Dr. Kwon Sung, a dentist from Korea who has now been in custody or home confinement on the island of Guam for more than two years because of behavior on an airplane that the sentencing guidelines punish with a sentence of zero to six months. I was going to ask you right at the beginning, has he served out the entire sentence now? He's had 47 days of actual custody in jail, your honor. Right. And he spent another 24 months at this point in home confinement. But that time doesn't count against the sentence. Well, what the judge did in this case is she gave him a sentence of three years, but gave him credit for 18 months. But not for home confinement time. She did, your honor. That's why she called it an 18 month sentence during the resentencing in October of last year. She basically gave him... Okay, I got you. I just wanted to make sure that we hadn't gotten to this too late. That's correct, your honor. He's still facing 18 more months. 18 more months of some sort of confinement. He's not getting credit for any time served since the resentencing in October. That's what I was asking. Right now he's sitting in a house on Guam in an ankle bracelet confined to quarters awaiting this court's ruling. But even if we were to hold that he was entitled to credit since October, he still would have additional time to serve. He'd still have about a year to go, your honor. Okay, that's what I wanted to make sure. We're here before the Ninth Circuit for the second time because the district court ignored this court's remand order and resentenced the defendant to the same sentence as before, three years. And once again, the district court did so without applying the guidelines in a manner that's procedurally sound or substantively reasonable. The district court paid lip service to this court's order that it should start its sentencing analysis with the guidelines as a starting point. And the district court revealed itself and its intentions to basically use the statutory maximum in its sentence when the judge said, and I quote, so that's a huge range of zero to six months all the way to 20 years imprisonment. That's what I'm looking at. I'm not just looking at zero to six months. The judge then proceeded to give Dr. Kwan a sentence six times higher than the sentence that's within which is a sentence of zero to six months. All for a crime, your honors, that the government and the probation officer agreed at the original sentencing and again at the resentencing should have been served with a sentence of 32 days of actual custody, which is what the defendant had when he was originally sentenced in the case the first time. Now it's up to 47 days because he had an apparent alleged violation of his pretrial conditions of release. In the resentencing in October of this past year, the district court mentioned several so-called aggravating factors, but they were the same factors that she listed in her original sentencing in November of 2016 as mitigating when she was then considering sentencing the defendant to between 10 and 20 years under her then analysis that this was a case that was governed really only by the statutory maximum of 20 years. Then in the resentencing, in the most significant procedural error, she did not give any explanation or justification as to the weight she applied to these so-called aggravating factors. Instead, she appeared to be simply attempting to justify a three-year sentence that she always had in mind. The substantial and substantive unreasonableness of her three-year sentence is revealed by the fact that each of the so-called aggravating factors that she cited in the resentencing is an essential element of the Level 7 calculation that the guidelines reach in recommending a sentence of zero to six months in the first place. The Level 7 contemplates there'll be some minor injuries to the aircraft personnel. In this case, there was some very minor injuries to one of the stewards. That's contemplated by the guidelines calculation. He got two extra points for causing some injury. That's what got him to the Level 7. She listed as an aggravating factor the fact that some of the passengers were uncomfortable during the altercation that ensued, but this is contemplated by the Level 7 of the guidelines. She was listed as an aggravating factor the fact that restraints had to be used on the defendant. But again, Your Honors, the Level 7 of the guidelines, which carries a zero to six-month sentence, contemplates that there'll be some interference with the flight crew that could lead to discomfort among the passengers and may lead to a defendant being restrained. All the behavior that the district court cited for why she gave Dr. Kwan six times the recommended guideline sentence are absolutely within the ambit and the spirit and the scope of the existing zero to six-month level already in place, leaving no room under the facts of this case for a substantial upward variance. So let's let's assume we agree with you that the district court erred. What would you have us do? At this point, Your Honor, because there's clearly an animus on the part of the district court judge, she's personalized this case. She's even said on the record that this is one of the worst cases she's seen before her, and she feels that if she were on that plane, she would have been absolutely beside herself. At this point, Your Honor, because of the passage of time and the fact we've already been to one resentencing where the court more or less disregarded the Ninth Circuit and went back to a three-year sentence, I would ask the court to exercise its authority to order that the defendant be sentenced to a time-served sentence at this point, that the guideline level of zero to six should be the actual sentence, and because he's now more than served that, the defendant should be released forthwith. That's the order this court should make. It would really be quite extraordinary for us to ourselves sentence a defendant. It's one thing to say you're entitled to a fair shot and maybe even to change the district judge, but for us to sentence ourselves, why should we do that? Because this is extraordinary, Your Honor. This court has already tried to give the district court some guidance. This court already tried to rein in a district court and remind the district court that the court had to apply the sentencing guidelines in a fair, procedurally, and substantively reasonable manner, and the court didn't, and now two years has gone by. A man is sitting far from home. His dental practice has collapsed. Is there, can you cite any Ninth Circuit case where the Ninth Circuit has done that? I mean, you know, now we're told the district judge you have to sentence defendants to, you know, A, B, and C. I can't cite a case, Your Honor, but the court does have the authority to order that the guidelines be applied, and if the guidelines are stricter, you apply them. Yeah, but that's different than, you know, the specific sentence you're talking about. In other words, if we could do that, well, certainly if we were in the habit of doing that, we would never have to entertain an argument to reassign to another judge for sentencing, would we? We just impose sentence ourselves. That's the easy way to do it, isn't it, in one sense? Well, that's correct, Your Honor, but this is the extraordinary case. We're here for the appellate court has inherent supervisory authority of the lower courts and can significantly limit their discretion on remand. This court could remand the cause and direct the entry of an appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances, and I will, that's the Estrada case. But get back to Judge Shishima's question. I was looking for a case in which a court of appeals had told the district court precisely what remanded with directions to impose a particular sentence, not to follow the guidelines or to stay within them or whatever, but one where we told the district judge, you must sentence this defendant to X number of days or X number of years, and that's the mandate of the court. Is there such a case? There is. It's United States v. Estrada at 777 Federal 3rd 1318. It's an 11th Circuit opinion from the year 2015 in which the government had requested the 11th Circuit to issue a limited remand directing the lower court to impose a specific guideline calculation, and the court granted that request and ordered the district court to sentence within a guideline range. This court could... I asked a different question, and I understand what you're saying. You are asking us to tell the district judge that she must sentence this defendant to time served. Well, the reason I would request time served, Your Honor, is because if the court orders the guideline sentence, it would be between zero and six months, and by the way, that's the sentence the government requested. That's the sentence that the probation office recommended. If the court ordered the district court to sentence within zero to six, because he's in 47 days of actual custody and almost two years now of house arrest, the sentence would effectively be served, and that would effectively be a time served sentence. Got it. Let's see from the other side. You've got about 30 seconds. Thank you, Your Honor. May it please the court, Steven Leon Guerrero, Assistant U.S. Attorney for the District of Guam and the Northern Mariana Islands. So first and foremost, Your Honors, you know, I would submit that the government is in an awkward situation, and we are in an awkward situation because, you know, we do acknowledge that the sentence that the court imposed on the defendant wasn't the sentence that we had argued for, so we acknowledge that. However, the role here for the government is to provide some context with respect to the brief that was filed on behalf of the appellant. So with respect to the time served, and I'll address that point, I would submit excerpts of record for the court sentenced the appellant to 18 months incarceration. And so why is that important? That's important because in the first sentencing, the court had imposed a 28-month sentence on the part of the appellant. And so on resentencing, it does show that the court was open-minded to the considerations and the arguments raised by the appellant, and reducing it by 10 months in sentencing the appellant. I would submit, too, that the appellant has received the fairest sentence. We would submit he received a fair sentence. Well, let me ask you a procedural question about this, Your Honor. Maybe it's a substantive question, but there have been similar sentences, sentences involving similar incidents. At least two were identified in the record from the District of Hawaii. Yes, Your Honor. And the district judge says, well, I don't have to pay attention to the District of Hawaii, more or less. I've never seen one of these before in Guam, and so isn't that error? I mean, isn't the whole purpose of the sentencing guidelines to try to normalize sentencing across districts and across the country? Yes, Your Honor. And with respect to the comment that was made about not caring what they do in Hawaii, you know, we would submit that, you know, maybe that wasn't the most appropriate sentence or however we submit that the cases that were provided, the court did consider it. The court considered this information, and I would submit with respect to the disparity aspect, you know, she talked at length with the government excerpts of record 29 to 34, and in excerpts of record 59, she said that there wasn't enough facts for her in those cases, at least what was presented to her, to actually rely on those in sentencing the appellant. So again, we acknowledge that the sentences were provided to the court. However, you know, she made the decision, exercised her discretion, that she didn't have enough facts before her considering that information, and again, she sentenced the defendant to another sentence, which, similar to Nankani, it's a sentence that, again, we submit, you know, wasn't extraordinary. And with respect to the Nankani case, again, that was a defendant that was sentenced to 33 months, and so again, 18 months, 33 months, we would submit that the sentence, again, notwithstanding it wasn't what we had asked for in the context, it wasn't something that we would submit constitutes reversible error. I would submit this appellant, again, received the fairest sentence. We have an approximately seven hearings that occurred, and we're talking about seven hearings, which amounted to over 12 hours of court time that the appellant had to be able to argue his position and argue the sentence that he wanted. So again, we submit this appellant did receive a fair sentence by this district court judge. The appellant sure got a lot of time out of this district judge. I read the resentencing hearing. The district judge, I have to say, maybe reduced the time served, but didn't change her view of the nature of the crime or the sentence she wanted to impose. So with respect to that, Your Honor, you know, we would submit, and I'm referring to excerpts of records 68 and 70, where she indicated that, you know, she considered, and it's apparent from the record, she considered the nature and circumstances of the offense and the deterrent of, you know, the crime that this appellant had committed, but she acknowledged the sentencing factors, promote respect for the law, provide just punishment, afford adequate deterrence. Yeah, but, you know, how do you explain the fact that, as your opponent argued, and it's clear from the record, the same factors, you know, at the first sentencing, she said these are mitigating factors. The very same factors at the second sentence, she said, well, these are aggravating factors, and she never explained why she changed her mind, did she? You know, so the inference is, well, she did it to justify imposing the same sentence that she had already imposed the first time. I mean, how else do you explain that change in, you know, describing a factor at one proceeding as mitigating and then turning around the next proceeding and saying, no, it's aggravating? Well, I would submit, Your Honor, on resentencing, we submit that the court was very thorough on the facts and the aggravating factors of what she relied on in sentencing the defendant, and I'm referring here to excerpts of 27 through 32, excerpts of records 65 through 66. So, again, she factored in the fact that, again, the purser, the flight attendant, was injured, and we acknowledge that that's encompassed within the guidelines. We also acknowledge that, during resentencing, that she also considered the smoking in the lavatory to be encompassed under the guideline consideration. But what she also indicated, and she also relied on, was other factors. So she relied on the fact that there was four to five passengers that had to restrain the defendant. She relied on the fact that we was very belligerent, very violent, to the point where he had to be tased. Here's one of the things that bothers me about the case. It's pretty much undisputed that he was agitated. It's pretty much undisputed that there's some mental difficulties going on, that maybe he should have been taking his medication, looks as though the medication might have actually gone on the other flight that he got that didn't work out. I mean, there are various circumstances that show that this is not someone who makes a career out of making people nervous or bothering people with their smoking. You know, this is aberrational. He's got mental problems, at least at the time. And now, because of the sequence of things in this case, he's a citizen of Korea. When this happened, he had an active dental practice in Korea. He was living with his mother and helping to support a disabled sister. Ever since this happened, he has been detained on Guam. That is to say, detained against his will under circumstances that would ordinarily give rise to habeas corpus in the sense that he's detained in a different place. His dental practice has been destroyed. I understand that he's not served 18 months in a prison facility, but he's now served more than two years in a place that is distinctly disabling him from living his normal life under house arrest. When do we quit? When is this not enough? Yes, Your Honor. And those are all very good points that Your Honor raises. And I would submit that those are all arguments that were raised with the court below. And she considered those, and I would submit she considered those to be mitigating prior to her sentencing this appellant. And I recognize that the government is not the cause of this problem in front of us today. But let's, I want to put, I still want to put you on the spot here. Let's assume we were to conclude that there's procedural error here. What should we do with this case? Well, Your Honor, I would submit same question I asked your colleague. And with respect to the reliance on the USB Estrada case that that was mentioned, and that alludes to the question that you had asked my colleague, you know, I would submit that that case is not applicable to this case. Estrada, the government conceded that the 16-level enhancement wasn't appropriate. The 16-level enhancement wasn't appropriate because it wasn't a qualifying conviction that warranted this. No, and I take your point. Estrada is not necessarily instructive for me. But I've still asked, I still need an answer to my question. What should we do? Let's assume we believe the appropriate thing would be to, on remand, allow the parties again to advocate their positions. I wouldn't... Well, but, I mean, that, one of, I guess is that famous statement that the definition of insanity is trying the same thing over and over again. I hate to raise that in the case in which mental health issues are raised. But wouldn't it make sense if we were to remand to ask a different judge? That's a great point, and I would submit the government wouldn't object to that, if that was a decision that Your Honor was to take. We wouldn't object to a remand to a different judge. Would the government object to a remand to a different judge with an instruction to enter a judgment for time served? So, that, Your Honor, we wouldn't, we would object to that. You would object to that? Yes, we would. And, number one, as... Would you object to a hint in a mem up, so we would submit that there's been no reversible error committed by the lower coordinate, and we ask that the appellant's sentence be affirmed. Thank you. Okay, thank you. Would you put a minute on the clock, please? Your Honors, thank you. I do remind you that this very principled prosecutor in May of 2016 begged the judge to release Dr. Kwan with 32 days. Well, if it were only the two of you, we would have no problem here. So, unfortunately, we have a third party that we're talking about. And appropriate to this court's question, this judge in Guam, she doesn't care what they do in Hawaii. She doesn't care what they do in Pasadena. She doesn't care what they do in Honolulu. She's going to give this guy 33, 36 months, Your Honor. The only reason why she cut the sentence 10 months during the resentencing was because she gave him 10 months for credit for time served in this exile he's serving on an ankle bracelet in a little house in Guam, far from home, family, and his practice. I will also, just in closing, Your Honor, add that I'm glad that the case of Nagani, N-A-G-H-A-N-I, was raised. I raised it in my reply brief because the Nagani case involved a defendant who was sentenced at a level 18. That's why the Ninth Circuit upheld his 33-month sentence. He was at level 18 because he endangered the aircraft. The pilot had to leave the cockpit, and it was a very different, more scary, factually difficult case. This client, this defendant, was at a level 7, and the judge had, she didn't have to find a level 7, but she did because the facts require a level 7. It's a 0 to 6. To get to 36 months is to leapfrog way beyond Nagani, something that absolutely violates any principle of disparity and is substantively procedurally flawed and completely unreasonable. I'll submit on that. Okay, thank you very much. Thank you.
judges: Tashima, W. Fletcher, Hurwitz